Wilbur R. McLAUGHLIN and Betty McLaughlin, his wife,

v.

The **FELLOWS GEAR SHAPER COMPANY**.

Appeal of Hermann PFAUTER.

No. 85–1327.

United States Court of Appeals, Third Circuit.

Argued Jan. 7, 1986.

Decided March 24, 1986.

---

Norbert F. Bergholtz (argued), Jean Wegman Burns, Frank J. O'Hara, Dechert Price & Rhoads, Philadelphia, Pa., for appellants.

Joseph Lurie (argued), Albert B. Gerber, Galfand, Berger, Senesky, Lurie & March, Philadelphia, Pa., for appellee.

Before ADAMS, SLOVITER and MANSMANN, Circuit Judges.

**OPINION OF THE COURT**

MANSMANN, Circuit Judge.

### I.

This is a Pennsylvania diversity action in which plaintiffs were successful in recovering damages under the strict liability theory of Section 402A of the Restatement of Torts for personal injury caused by defectively designed machinery. On appeal, defendants have raised several trial errors, chiefly, that the district court erred in resubmitting the foreseeability issue to the jury and in *sua sponte* setting aside the jury's finding of assumption of the risk. Finding no merit in any of the allegations raised, we affirm.

### II.

This product liability action arose from an accident in which Wilbur McLaughlin suffered the amputation of his left thumb when he was preparing a Gear Hobbing Machine for use. The particular machine McLaughlin was preparing was a Pfauter Model P–900 hobber, manufactured by defendant Hermann Pfauter and sold to McLaughlin's employer by defendant Fellows Gear Shaper Company (Fellows).[1]

A hobbing machine is a milling machine used to cut teeth into cylindrical steel pieces which will become gears. The machine involved is designed for automatic, high-speed operation. It is equipped with adequate pinchpoint guarding during automatic operation. Before actually operating the machine, however, the worker must prepare or "set-up" the machine by making certain adjustments to the machine to ensure that the correct size gear is produced. Because precise adjustments are required, it is necessary for the worker to have access to the dangerous cutting surface area. The "set-up" procedure also involves jogging the machine manually, that is, causing the machine to rotate briefly. During the "set-up" operation the machine is in the manual mode.

---

1. Fellows subsequently filed a crossclaim for indemnity against Hermann Pfauter. This is not presently before us on appeal.

It was while McLaughlin was engaged in jogging the machine in the course of carrying out the "set-up" operations that the accident occurred. McLaughlin was balancing in a half-crouch position on top of the machine, setting up the machine, and was using his left hand for balance and support. When he lowered the "collar" of the machine to the workpiece, the machine cut off the thumb on his left hand.

The plaintiffs' theory at trial was that the Pfauter gear hobber was defective and unsafe since it did not have an automatic interlock or two-handed control switch which could be used during the manually operated "set-up" procedure. Defendants presented a two-pronged defense: first, defendants maintained that the machine was not defective because an automatic interlock was not necessary during the "set-up" stage when the machine was being operated manually and second, the defendants argued that McLaughlin had assumed the risk.

At the conclusion of the evidence the district court submitted five interrogatories to the jury covering the issues of the case. The interrogatories and the jury's answers were as follows:

1. When the hobbing machine was delivered to LinkBelt (now P.T. Components), was it in a defective condition rendering it unsafe for its intended use?
 Yes _X_ No___
2. If so, was the defective condition of the hobbing machine a proximate cause of the accident and plaintiff's injury?
 Yes _X_ No___
3. Was it foreseeable to the manufacturer that operators would, on occasion, stand on the machine while carrying out the setting-up process?
 Yes ___ No _X_
4. Did plaintiff assume the risk?
 Yes _X_ No___
5. (To be completed only if your verdict is in favor of plaintiffs.)
 We, the jury, award damages as follows:

Mr. McLaughlin $100,000
Mrs. McLaughlin $20,000

Upon learning the jury's answers, defendants moved for entry of judgment in their favor, and plaintiffs moved for a mistrial. The district court denied both requests. Instead, the court submitted two additional questions to the jury to clarify the foreseeability question, in particular, to determine the effect of McLaughlin's standing on the machine during the time it was being set up for operation. The supplemental interrogatories and answers were as follows:

3(a) Was the fact that plaintiff stood on the machine a substantial factor in causing the accident?
 Yes ___ No _X_
(b) Was it the sole cause of the accident?
 Yes ___ No _X_

After ascertaining that the jury was unanimous in its answers to these supplemental interrogatories, the district court asked the following questions of the jury in open court and received the following responses:

THE COURT: Finally, members of the jury, by the answers that you have given, is it your intention to find in favor of the plaintiffs or in favor of the defendants? Can somebody state what you have in mind?

[THE FOREPERSON] Plaintiff.

THE COURT: You all agree you intend to find in favor of the plaintiffs in the sum of $120,000?

(The jury answered in the affirmative.)

Subsequently, the district court set aside the jury's finding of assumption of the risk and entered judgment in favor of the plaintiffs in the amount of $135,879.45, including delay damages. Defendants' subsequent motions for judgment notwithstanding the verdict and for a new trial were denied by the district court.

## III.

■ Defendants' first argument faults the procedural course of the case. Specifically, defendants contend that the district

court erred when it determined that the answers to the special interrogatories were inconsistent and when it set aside the jury's finding of assumption of the risk and entered judgment for plaintiffs, which defendants characterize as an entry of judgment n.o.v. in favor of plaintiffs on this issue. Given the record in this case, two things are clear: first, the district court followed the procedure for general verdicts and interrogatories outlined in Federal Rule of Civil Procedure 49(b) [2] and second, this case does not involve a judgment n.o.v. and so does not turn upon the procedural dictates of Federal Rule of Civil Procedure 50 which governs motions for directed verdict and for judgment notwithstanding the verdict. For these reasons, we find defendants' first argument to be unpersuasive.

## A. Rule 49(b)

The district court, following the procedures authorized in Rule 49(b), submitted five interrogatories to the jury together with a request for a general verdict at the conclusion of trial. The answers to the first two interrogatories reflected the finding by the jury that the hobbing machine was defective and that the defect was the proximate cause of the accident. The answer to the third interrogatory revealed that the jury found it was not foreseeable to the manufacturer that operators might stand on the machine, and the answer to the fourth interrogatory indicated that the jury further found that plaintiff had as-

sumed the risk. The fifth interrogatory, which bore the instruction that it was only to be completed if the verdict was in favor of plaintiffs, clearly indicated a finding in favor of plaintiffs and read: "We the jury award damages as follows: Mr. McLaughlin $100,000, Mrs. McLaughlin $20,000."

When assessing these jury findings, the district court observed in its May 1, 1985 opinion:

> Obviously, these answers were inconsistent with each other. Under the instructions of the court, the jury could not have found in favor of the plaintiffs and thus awarded them damages, while at the same time finding that plaintiff had assumed the risk. And it was equally apparent that the true import of the jury's answer to the third question could not be determined, because of the unfortunate incompleteness in the wording of the question. The finding that plaintiff's 'misuse' of the machine was not foreseeable would absolve the defendants from liability if, but only if, there was a causal connection between the manner in which plaintiff was conducting the set-up operation, (i.e., the misuse of the product) and the happening of the accident—and the jury had not been asked to make a finding on that subject.

Accordingly, at the time of trial, the district court submitted to the jury two supplemental interrogatories in order to clarify the effect of McLaughlin's standing on the

---

**2.** Fed.R.Civ.P. 49(b) provides:

(b) General Verdict Accompanied by Answer to Interrogatories. The court may submit to the jury, together with appropriate forms for a general verdict, written interrogatories upon one or more issues of fact the decision of which is necessary to a verdict. The court shall give such explanation or instruction as may be necessary to enable the jury both to make answers to the interrogatories and to render a general verdict, and the court shall direct the jury both to make written answers and to render a general verdict. When the general verdict and the answers are harmonious, the appropriate judgment upon the verdict and answers shall be entered pursuant to Rule 58. When the answers are consistent with each other but one or more is inconsistent with the general verdict, judg-

ment may be entered pursuant to Rule 58 in accordance with the answers, notwithstanding the general verdict, or the court may return the jury for further consideration of its answers and verdict or may order a new trial. When the answers are inconsistent with each other and one or more is likewise inconsistent with the general verdict, judgment shall not be entered, but the court shall return the jury for further consideration of its answers and verdict or shall order a new trial.

In the district court opinion denying defendants' Motion for Judgment n.o.v. and/or a New Trial, the court represents: "The procedure which was followed in this case is in substantial compliance with that contemplated by F.R.Civ.P. 49(b)." This evinces the intent of the district court that its actions conformed to the framework of Rule 49(b).

hobbing machine while he was preparing it for operation. On this point the district court offered the following explanation:

> I propose to submit a Question 3(a) to clarify that question of standing on the machine as follows: 3(a): "Was the fact that plaintiff stood on the machine a substantial factor in causing the accident?" And a further question, "Was it the sole cause of the accident?" If they find it was the sole cause of the accident, and it was not foreseeable, then I think certainly it is a defendants' verdict. And obviously if their finding of assumption of risk stands up that would be a defendants' verdict. But if they find it was not a sole cause of the accident and if the Court sets aside the assumption of risk finding then that would be a verdict for the plaintiff.

Defendants complain that the district court was required by the Seventh Amendment to reconcile the inconsistencies in the original five jury interrogatories. Moreover, defendants contend that the answers to these five interrogatories were not inconsistent, that they could be reconciled and that a defense verdict was mandated.

In *Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355, 82 S.Ct. 780, 7 L.Ed.2d 798 (1962), the Supreme Court of the United States held:

> Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way. For a search for one possible view of the case which will make the jury's finding inconsistent results in a collision with the Seventh Amendment.

*Id.* 369 U.S. at 364, 82 S.Ct. at 786. Such a holding was required, reasoned the Court, since facts as found by the jury cannot be redetermined by a court. *Id.* at 359, 82 S.Ct. at 783. In support of its position, the Court cited the Seventh Amendment which mandates that "no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the

rules of the common law." *Id.* 369 U.S. at 359, 82 S.Ct. at 783.

In the case before us, however, the answers are inconsistent on their face and cannot be read to be consistent. Answers to the first and second questions are inconsistent with the answers to the third and fourth questions. Moreover, the answers to the third and fourth questions are inconsistent with the general verdict in favor of plaintiffs. Recognizing this, the district court gave the jury further instructions and two supplemental questions and asked it to return for further deliberations.[3] The district court did not redetermine the facts as found by the jury but rather asked the jury to reconsider its decision. In this there can be no Seventh Amendment violation.

Moreover, the decision to seek clarification from the jury in order to resolve the apparent conflict in the answers to the five original interrogatories is precisely what Rule 49(b) of the Federal Rules of Civil Procedure prescribes in such a situation, and the district court cannot be faulted for having followed it. In relevant part Rule 49(b) states:

> When the answers are inconsistent with each other and one or more is likewise inconsistent with the general verdict, the court shall not direct the entry of judgment but *may return the jury for further consideration* of its answers and verdict or may order a new trial. (emphasis supplied).

In *Stanton v. Astra Pharmaceutical Products*, 718 F.2d 553 (3d Cir.1983), we reviewed the provisions of Federal Rule of Civil Procedure 49 and noted that "[t]here is no doubt that Rule 49(b) expressly authorizes resubmission [to a jury] of inconsistent answers to special interrogatories." At the end of trial, the *Stanton* jury was presented with twenty-seven "special questions" prepared by the district court and counsel. Although it returned with an award in favor of plaintiffs, the award was inconsistent with the jury's answers to sev-

---

**3.** The record reflects that plaintiffs' counsel did make a request that the jury reconsider its answers and verdict in light of the inconsistent findings but did not specifically cite Rule 49(b).

eral of the "special questions." To resolve this conflict, the district court resubmitted the questions to the jury after explaining to them its reason for doing so. The jury then deliberated and changed its answers to several key questions which resulted in an appropriate finding of liability to accompany the award of damages.

The defendant appealed, arguing that the questions were submitted under Rule 49(a) rather than 49(b). In reviewing that matter, we concluded that the "special questions" were submitted under Rule 49(b) which specifically allows for further clarification of inconsistent answers and accordingly found no abuse of discretion by the district court in resubmitting the "special questions" to the jury for resolution of inconsistencies.

Considering the defendant's Rule 49(a) argument, however, we noted that the language of Rule 49(a) did not prohibit resubmission and that there is "no reason in logic or policy so to distinguish between Rule 49(a) and Rule 49(b) questions." *Id.* at 575. Therefore, we concluded that the district court retained the discretion to resubmit questions also under this rule.

Although the *Stanton* case involves resubmission to the jury of the same questions and the case under review presently involves resubmission of supplemental interrogatories, the underlying purpose of both options is identical: namely, to obtain clarification from a still-empaneled jury of the meaning of its answers and verdict. Interestingly, we did identify and endorse in *Stanton* the option of submitting supplemental interrogatories to harmonize inconsistent jury responses. To this end, we cited to the following language from a decision by the United States Court of Appeals for the Fifth Circuit:

> It would be anomalous to hold that, while a court pursuant to Rule 49(a) must search for a view of the case which will make the jury's answers consistent,

it may not submit an additional interrogatory to the jury to clarify an ambiguity. *Stanton, supra,* at 575, citing *Morrison v. Frito-Lay, Inc.,* 546 F.2d 154, 161 (5th Cir. 1977).

We conclude, therefore, that the district court can be found neither to have erred when it determined that the answers to the interrogatories were inconsistent and non-reconcilable nor to have abused its discretion in submitting supplemental interrogatories to the jury in order to resolve the apparent inconsistencies and to clarify the answers given to the original five interrogatories.

### B. Judgment N.O.V.

 To reiterate, the district court set aside the jury's finding on assumption of the risk and entered judgment for plaintiffs. Defendants view this action on the part of the court as an entry of judgment n.o.v. in favor of plaintiffs on the assumption of risk issue. Thus, defendants claim that procedurally under the Federal Rules, in order to be entitled to a judgment n.o.v., the moving party, plaintiffs herein, first must have made a motion for directed verdict on the issue in question. Defendants argue that substantively there is more than enough evidence in the record to support the jury's finding of assumption of risk.

We have reviewed the district court's entire charge to the jury, especially that portion dealing with assumption of risk, and conclude that the court fully explained the legal principles which the jury was to apply in rendering its decision. We must assume that the jury, hearing all of this, understood the charge and accordingly returned a verdict for plaintiffs. Having received a verdict in their favor, plaintiffs were not in a position to be seeking judgment n.o.v.[4] under Federal Rule of Civil Procedure 50.

It is, therefore, immaterial that plaintiffs failed to file a motion for directed verdict.

---

**4.** As a parenthetical note, we point out that judgment n.o.v. literally means judgment *non obstante verdicto,* or a judgment not withstanding the verdict rendered by the jury. Black's Law Dictionary, 5th ed. 1979. Plaintiffs, as verdict winners, had no reason to pursue such a remedy.

This is not a case governed by the procedural dictates of Rule 50.[5]

■ Regarding defendants' substantive argument, we conclude that the evidence in the record was not sufficient to sustain the jury's findings of assumption of risk, and so the district court was justified in setting aside this finding and entering judgment on the general verdict rendered by the jury in favor of plaintiffs.

A similar issue was presented to us in *Elder v. Crawley Book Machinery Company*, 441 F.2d 771 (3d Cir.1971), also a Pennsylvania diversity case brought under Section 402A of the Restatement of Torts. In *Elder*, the plaintiff severed two fingers from her left hand while preparing a Building-In Machine for the day's workload. Plaintiff contended that the machine was defectively designed, and the defendant pressed the defense of assumption of the risk.

After reviewing the law with regard to assumption of the risk, we concluded "[T]hat if plaintiff's fingers were placed in a dangerous position in the machine by reason of inadvertence, momentary inattention or diversion of attention, that would not amount to assumption of the risk." *Id.* at 774. As we noted in *Elder*, the Restatement's definition of the doctrine of assumption of the risk "makes it clear that the law envisions a conscious appreciation of danger and a willingness to risk it." *Id.* at 773. See also *Burch v. Sears Roebuck and Co.*, 320 Pa.Super. 444, 467 A.2d 615, 619, (when plaintiff places himself in a position of danger, while consciously aware and appreciating the danger, and not as a result of momentary inattention or inadvertence, he may be found to have assumed the risk, thus precluding liability); Section 496 Restatement of Torts (Second).

We conclude that there was no evidence presented from which a jury could conclude that McLaughlin consciously or willingly accepted the risk of having his thumb amputated. McLaughlin had worked on a regular basis on the gear hobber as a machine operator for thirteen or fourteen years. From his testimony it is clear that McLaughlin believed his left hand was in a safe position when he activated the lever lowering the tail stalk with his right hand. It was his usual practice to position his hands on the machine as he did on the day of the accident. Giving an account of the accident, McLaughlin testified as follows:

> ... I was holding myself with my left hand out like this, I seen I was high and I reached over with my right hand and looked over to see where the lever was, I reached over, I pulled the lever and when I pulled the lever to bring it down I felt pain and I jumped back to

5. In pertinent parts, Rule 50 provides:

Rule 50. Motion for a Directed Verdict and for Judgment Notwithstanding the Verdict a) Motion for Directed Verdict: When Made; Effect. A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made. A motion for a directed verdict which is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts. A motion for a directed verdict shall state the specific grounds therefor. The order of the court granting a motion for a directed verdict is effective without any assent of the jury.

b) Motion for Judgment Notwithstanding the Verdict. Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Not later than 10 days after entry of judgment, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict; or if a verdict was not returned such party, within 10 days after the jury has been discharged, may move for judgment in accordance with his motion for a directed verdict. A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative. If a verdict was returned the court may allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as if the requested verdict had been directed. If no verdict was returned the court may direct the entry of judgment as if the requested verdict had been directed or may order a new trial.

the floor. I looked out at my hand and I saw my thumb was missing. And I realized the terrible, terrible thing had happened. I lost my thumb. That is all it was, I lost it. I looked up and I seen my thumb stuck between the journal, the sticker, lower journal and the journal, it was riding on. It was stuck between the outboard—stuck between the tail stalk and bushing and the tail stalk and the journal.

Q. What was the position of your left hand when you went to operate the lever?

A. It was resting against the piece, wherever it was resting. I used that like a post to rest myself and balance myself up here. It is the best place to put your hand because over here you would cut your hand on the hob and that is too high to reach. So I always put my hand out on the shaft that I am working on. I was balancing myself like this and I had my hand out like that below where I was working and I could see where I have got to do and seen I had to bring it down and knowing I had to bring it down the quickest way to bring it down was to reach right over and get it. I reached over and got it and brought it down.

Q. At that time were you aware that your left hand was in a pinch point position?

A. No, sir, it was not in a pinch point position. It was down below the pinch point position.

Q. But, nevertheless, your left hand was indeed amputated.

A. Yes sir.

Q. Your left thumb?

A. My left thumb was amputated.

On cross McLaughlin reaffirmed his belief that his left hand was in a safe place when he activated the machine.

We are in agreement with the summation afforded by the district court on this point: There [is] ... no evidence to suggest that plaintiff knowingly or intentionally placed his thumb in a position of danger; rather, it [is] clear that plaintiff thought

his hand was in a safe position, became preoccupied with what he was doing, and inadvertently allowed his thumb to reach a point of danger.

The finding by the jury on the assumption of the risk issue was contrary to the evidence, and it was, therefore, appropriately set aside by the district court. Moreover, it was appropriate for the district court to enter judgment in favor of plaintiffs.

### IV.

Defendants also raise in this appeal three other issues; specifically, 1) that the district court erred in concluding that the Gear Hobbing Machine was unreasonably dangerous; 2) that the district court erred in refusing to instruct the jury on the issue of comparative causation; and 3) that the district court erred in permitting Dr. Carl A. Silver to testify as an expert witness on the design of the Gear Hobbing Machine. We find no merit in any of these arguments.

### V.

Accordingly, we affirm the judgment of the district court.

ADAMS, Circuit Judge, dissenting.

I respectfully dissent because the majority in affirming the district court has sanctioned a violation of Rule 49(b) of the Federal Rules of Civil Procedure as well as a transgression of the time-honored rule of this Court, bottomed largely on the Seventh Amendment to the Constitution, that before judgment notwithstanding the verdict may be granted there must be a motion for a directed verdict.

### I.

To understand these two issues clearly, it may be helpful to restate briefly the pertinent facts. Plaintiff Wilbur McLaughlin was injured while setting up a gear hobbing machine on the premises of his employer. After a four-day trial, the district court submitted to the jury an original set

of special interrogatories which asked them to determine: (1) whether the gear hobbing machine which allegedly caused McLaughlin's injury was defective; (2) if so, whether the defect was the proximate cause of the injury; (3) whether it was foreseeable that users of the machine would on occasion stand on the machine's railing in the course of setting it up as McLaughlin did; and (4) whether McLaughlin had assumed the risk of injuring himself. The jury was also directed, if it found for McLaughlin and his wife, to determine the damages to be awarded to them. Although both defendants renewed their motions for a directed verdict at the close of the evidence and before submission of the interrogatories to the jury, as required by Federal Rule of Civil Procedure 50(a), plaintiffs made no motion for a directed verdict then or at any other time.

The jury returned answers to the interrogatories, finding that the gear hobber was defective; that the defect caused McLaughlin's injury; that it was not foreseeable by the manufacturer that workers might stand on the machine's railing; and that McLaughlin had assumed the risk of injuring himself when he deliberately placed his hand near a known pinchpoint in the equipment. Although these answers, given the finding on assumption of the risk, required that a verdict for defendants be entered, the jury nonetheless awarded $100,000 to McLaughlin and $20,000 to his wife.

When the answers to the interrogatories were returned, and it was perceived that they were inconsistent with the general verdict, plaintiffs moved for a mistrial. Defendants moved for entry of judgment in their favor, on the basis of the clear finding by the jury that the plaintiff had assumed the risk and because they had filed a motion for a directed verdict. The district court declined to grant either of these motions. Instead, over objection, he submitted two additional special interrogatories to the jury. These additional interrogatories were intended to determine whether the jury had found that McLaughlin's unforeseeable use of the machine in standing on its railing had been a cause of the accident. The jury in response to the supplemental questions found that McLaughlin's position on the railing was neither the sole nor a substantial factor in causing his injury. Upon the return of these answers, and without any motion for a judgment n.o.v. by plaintiffs, the district court "set aside" the jury's finding of assumption of risk, and entered judgment for plaintiffs.

The majority concludes that the trial court acted properly (1) when it submitted the supplemental interrogatories to the jury, and (2) when it set aside the jury's finding of assumption of risk despite the absence of a motion for a direct verdict, and proceeded to enter judgment for plaintiffs. It reasons that the "resubmission" of additional special interrogatories was permissible under Federal Rule of Civil Procedure 49(b) and was appropriate since the jury's initial answers to special interrogatories were inconsistent with each other and with the general verdict. It further concludes that the trial judge did not err in setting aside the jury's finding of assumption of risk because that action did not amount to granting a judgment notwithstanding the verdict and thus was not governed by the procedural strictures of Federal Rule of Civil Procedure 50(b). Agreeing with the district court's conclusion that there was insufficient evidence to support a finding that McLaughlin assumed the risk of injuring his thumb, the majority holds that the district court was justified in rejecting the jury's finding of assumption of risk and entering judgment for plaintiffs on the jury's other special findings, in accordance with its return of a general verdict for plaintiffs.

I disagree that this case involves a matter of resubmission to the jury of inconsistent answers to special interrogatories. The special findings of the jury, both before and after the trial court submitted the supplemental questions, were reconcileable with one another. Although the findings by the jury were plainly inconsistent with the general verdict for plaintiffs, both the Seventh Amendment and Fed.R.Civ.P. 49(b)

prohibit a federal court from choosing from among a jury's findings those that will be set aside and those that will be given effect. Under Fed.R.Civ.P. 49(b), when a jury's answers to special interrogatories are consistent with each other but inconsistent with the general verdict, the court may either request the jury to reconsider all of its answers, enter a judgment consistent with the jury's special findings, or grant a new trial. Even if the special findings of the jury in this case were inconsistent with one another, the appropriate course of action under Rule 49(b) was to order a new trial or to resubmit *all* of the answers to the jury to allow it to reconcile them itself.

Furthermore, the procedure employed in the district court violated the clear-cut requirement stated in Federal Rule of Civil Procedure 50(b) and emphasized in numerous opinions by this Court that a grant of judgment n.o.v. must be preceded by a motion for a directed verdict specifically identifying the ground upon which judgment n.o.v. is requested. This rule serves important practical purposes in ensuring that neither party is precluded from presenting the most persuasive case possible and in preventing unfair surprise after a matter has been submitted to the jury. More importantly, the rule has constitutional underpinnings in the Seventh Amendment's guarantee that "no fact tried by a jury, shall be otherwise re-examined in any court of the United States, than according to the rules of the common law."

Because I conclude that the trial court invaded the province of the jury when it set aside the finding of assumption of risk, I respectfully dissent.

## II

### A.

The first three special interrogatories submitted to the jury concerned the issues whether the gear hobbing machine was defective and, if so, whether the defect was the cause of McLaughlin's injury. Arguably, the third question regarding whether McLaughlin's position on the railing was foreseeable ought not to have been submitted to the jury separately from the first interrogatory. Whether a manufacturer has a duty to protect against dangers posed by unintended uses is an issue subsidiary to the larger question whether a product is defective within the meaning of § 402A of the Restatement (Second) of Torts. *See, e.g., Berkebile v. Brantly Helicopter Corp.,* 462 Pa. 83, 337 A.2d 893, 900–03 (1975) (Jones, C.J., with one judge concurring and five judges concurring in the result); *Burch v. Sears, Roebuck and Co.,* 320 Pa.Super. 444, 467 A.2d 615, 619 (1983); *Eschbach v. W.T. Grant's and Co.,* 481 F.2d 940, 942–43 (3d Cir.1973). Thus, the jury's third finding, that McLaughlin was engaged in an unforeseeable use of the machine at the time of the accident, was potentially inconsistent with its first finding that the machine was defective. Nonetheless, the jury's first three answers were also subject to an interpretation that rendered them consistent. From its answers to the first two special interrogatories, indicating that the machine was defective and that the machine's defect had caused the accident, it could have been inferred that McLaughlin's position on the railing had not contributed to the accident in any way. Reading the answers in this fashion, the jury's finding that McLaughlin's position on the railing was an unforeseeable use was consistent with its finding that the gear hobber was defective. Because under the Seventh Amendment, a federal court is required to seek a view of the special findings of the jury that will render all of them consistent, if possible, the jury's first three findings should have been so viewed. *See Gallick v. Baltimore & Ohio R.R.,* 372 U.S. 108, 119, 83 S.Ct. 659, 666, 9 L.Ed.2d 618 (1963); *Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.,* 369 U.S. 355, 364, 82 S.Ct. 780, 786, 7 L.Ed.2d 798 (1962); *Alvarez v. J. Ray McDermott & Co., Inc.,* 674 F.2d 1037, 1040 (5th Cir.1982).

Nor was the jury's fourth special finding—that McLaughlin had voluntarily assumed a known risk by consciously placing

his hand in an area that he knew posed a danger of injury—at odds with its findings of defect, causation, and the unforeseeability of McLaughlin's position on the railing. The jury in effect found that although all the elements of defendants' liability existed, a complete defense to that liability existed as well, by virtue of McLaughlin's assumption of the risk. This is so because, under Pennsylvania law, a finding of assumption of risk constitutes a complete defense to the imposition of strict liability on a defendant. *See Berkebile*, 337 A.2d at 901; *Ferraro v. Ford Motor Co.*, 423 Pa. 324, 223 A.2d 746, 748 (1966).

Clearly, the jury's general verdict for plaintiffs was inconsistent with its finding that McLaughlin had assumed the risk of injuring himself, as the assumption of risk finding should have mandated a verdict for defendants. However, under Fed.R.Civ.P. 49(b),[1] where a jury returns answers to special interrogatories that are consistent among themselves but inconsistent with the general verdict, as was the case here, the remedy is either to set aside the general verdict and enter judgment upon the special findings; to return the jury so that it may reconsider and reconcile all of its findings; or to grant a new trial. Neither Rule 49(b) nor any other Rule of Civil Procedure allows a court to "set aside" those special findings that conflict with the general verdict, absent the filing of a motion for a directed verdict on those specific findings at the close of the evidence and a motion for a judgment notwithstanding the verdict. *See* Fed.R.Civ.P. 50.

The majority relies upon *Stanton v. Astra Pharmaceutical Products*, 718 F.2d 553 (3d Cir.1983), as the sole authority for its position that the district court's actions in this case were in conformance with Rule 49(b). However, *Stanton* merely approved the resubmission to a jury of *all* of its inconsistent special findings to allow the jury to reconcile them itself. This practice is clearly contemplated by Rule 49(b). Although the majority would characterize the procedure followed in the district court here as the "resubmission" to the jury of supplemental interrogatories for the purpose of clarifying its inconsistent initial findings, it is plain that this case presents a situation quite different from that in *Stanton*. No supplemental interrogatories were submitted to the jury in *Stanton*, as was done here. It is true that *Stanton* approved in dictum the submission of supplemental questions to a jury where the answers may serve to reconcile potential conflicts in the initial special findings. *Stanton*, 718 F.2d at 575 (citing *Morrison v. Frito-Lay, Inc.*, 546 F.2d 154, 161 (5th Cir.1977)). However, even assuming arguendo that such a practice is permitted under Rule 49(b), its purpose would be to reconcile, if possible, all the findings of the jury. The procedure followed in the case at hand did not harmonize the jury's initial findings; indeed, they were already consistent. And their consistency was only reaffirmed by the jury's response to the supplemental questions. Furthermore, the submission of the supplemental interrogatories in no way affected the jury's finding of assumption of risk. That finding indicated that a judgment for defendants was proper. While that finding was at variance with the general verdict returned by the jury, only the jury could resolve that inconsistency.

Neither *Stanton* nor any other case cited by the majority purports to authorize a court to set aside one of the jury's special findings so as to reconcile the findings and verdict as the court sees fit. Thus the procedure followed in the district court, in my view, was improper under Rule 49(b).

1. Fed.R.Civ.P. 49(b) provides in pertinent part: (b) General Verdict Accompanied by Answer to Interrogatories. The court may submit to the jury, together with appropriate forms for a general verdict, written interrogatories upon one or more issues of fact the decision of which is necessary to a verdict.... When the answers are consistent with each other but one or more is inconsistent with the general verdict, judgment may be entered pursuant to Rule 58 in accordance with the answers, notwithstanding the general verdict, or the court may return the jury for further consideration of its answers and verdict or may order a new trial.

## B.

In addition to holding that the setting aside of the assumption of risk finding was in accordance with Rule 49(b), the majority concludes that that action did not constitute a grant of judgment n.o.v. and thus is not governed by Rule 50(b). Its reason for so concluding is that, since the jury returned a general verdict for plaintiffs, "plaintiffs were not in a position to be seeking judgment n.o.v. under Federal Rule of Civil Procedure 50." Ante at 597 (footnote omitted).

The majority thus appears to assume that the rules governing the grant of judgments n.o.v. have no applicability where a court sets aside a special finding by the jury as distinguished from setting aside a general verdict. This assumption, however, is unfounded. Whether a court seeks to set aside the jury's general verdict or a subsidiary finding, its power to do so is limited by the Seventh Amendment. The power of the trial court is also governed by Rule 50(b), which sets forth the procedure that must be followed in order to set aside a jury's findings without transgressing constitutional boundaries.

In *Baltimore & Carolina Line v. Redman,* 295 U.S. 654, 55 S.Ct. 890, 79 L.Ed. 1636 (1955), the Supreme Court considered the constitutionality of judgments n.o.v. It explained that the aim of the Seventh Amendment was to retain the common-law distinction between the roles of the court and of the jury. Thus, practices recognized at common law at the time the Seventh Amendment was adopted were deemed to be consistent with the amendment. The Court observed that, at the time of the amendment, entry of a judgment n.o.v. was permitted if the trial court had expressly reserved the question of the sufficiency of the evidence to be ruled upon after the jury had returned a verdict. The Supreme Court thus held that, where a trial court takes a jury's verdict subject to the opinion of the court on a question of law, it may set aside the jury's verdict for one party and enter judgment for the other without infringing the Seventh Amendment right to trial by jury. The Court distinguished *Slocum v. New York Life Insurance Co.,* 228 U.S. 364, 33 S.Ct. 523, 57 L.Ed. 879 (1913), in which it had held that entry of a judgment contrary to that returned by the jury violated the Seventh Amendment, on the ground that in *Slocum* the trial court had not expressly reserved the question of the sufficiency of the evidence.

Federal Rule of Civil Procedure 50(b) somewhat modified the requirements set forth in *Redman.* Rule 50(b) dictates that a party make a motion for a directed verdict at the close of all the evidence before judgment n.o.v. may be granted in his favor. Thus, where a motion for a directed verdict has been made, a trial court need not expressly reserve its ruling on the sufficiency of the evidence before the matter is submitted to the jury in order to preserve its authority to enter a judgment n.o.v. However, the motion for a directed verdict serves the same purpose as an express reservation. As Rule 50(b) explains: "Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion."

The Supreme Court has never indicated that *Redman* is no longer the law or that a judgment n.o.v. may constitutionally be granted without a prior reservation, whether explicit or implicit, of the question regarding the sufficiency of the evidence. And the cases in this Circuit have been emphatic in reaffirming the necessity that a judgment n.o.v. be preceded by a motion for a directed verdict, and in recognizing the constitutional underpinnings of that requirement. For example, we stated in *Lowenstein v. Pepsi-Cola Bottling Co.,* 536 F.2d 9 (3d Cir.1976):

> To ask the court to enter a judgment, contrary to a general verdict of the jury where no motion for a directed verdict has been interposed, is simply to ask the court to re-examine the facts already tried by the jury, and this the court may

not do without violating the Seventh Amendment.

*Id.* at 11 (quoting 5A *Moore's Federal Practice* § 50.08, at 2358–59 (1975)). *See also Bonjorno,* 752 F.2d 802 at 814; *Acosta v. Honda Motor Co.,* 717 F.2d 828, 831 (3d Cir.1983); *Mallick v. International Brotherhood of Electrical Workers,* 644 F.2d 228, 233 (3d Cir.1981).

. While the district court did not enter a judgment contrary to the general verdict returned by the jury, its action in setting aside the jury's finding that McLaughlin had assumed the risk no less involved the court in re-examining the facts found by the jury. In *Bonjorno,* we recognized that a grant of judgment n.o.v. *regarding a single issue,* absent a motion for a directed verdict on that issue, implicated the Seventh Amendment. As we explained there, "[W]hen a trial court decides an issue after it was properly submitted to the jury, it may deprive the non-moving party of his Seventh Amendment rights." 752 F.2d at 814.

There are additional purposes served by Rule 50's requirement that the grant of a judgment notwithstanding the verdict be preceded by a motion for a directed verdict. Rule 50(a) requires that a motion for a directed verdict specifically identify the ground on which a directed verdict is sought. Our cases have re-enforced that requirement by holding that a judgment n.o.v. may not be granted on a ground not expressly raised in a motion for directed verdict. *See, e.g., Bonjorno,* 752 F.2d at 814; *Abraham v. Pekarski,* 728 F.2d 167, 172 (3d Cir.1984); *Acosta,* 717 F.2d at 831–32. This rule ensures that the non-moving party is given the opportunity to cure any defects of proof that might exist rendering his case insufficient to warrant submission to the jury. "A motion for judgment n.o.v., without prior notice of alleged deficiencies of proof, comes too late for the possibility of cure except by way of a complete new trial." *Lowenstein,* 536 F.2d at 11. *See also Acosta,* 717 F.2d at 831–32; *Wall v. United States,* 592 F.2d 154, 159–60 (3d Cir.1979).

In this case, far from having raised the specific issue of assumption of risk in a motion for a directed verdict, plaintiffs never filed such a motion at all. Thus, defendants had no warning that the district judge, after properly submitting the question to the jury, might later decide to set aside the jury's finding based on his own determination that McLaughlin had not assumed the risk. By so doing, the trial court violated both the Seventh Amendment and Rule 50(b).

### III.

Under the circumstances presented in the district court, when the jury returned a general verdict for plaintiffs along with a special finding of assumption of risk, the district judge should have returned the jury for further consideration of its answers and its verdict, or entered judgment for defendants, or granted a new trial. As the district court declined to follow the first of these courses of action, we are limited on review to choosing between the latter two options. Although I disagree with the majority that there was insufficient evidence as a matter of law to support the finding of assumption of risk, where the jury obviously misunderstood the consequences of its finding that McLaughlin had assumed the risk of injury and was not given the opportunity to reconcile the answers and verdict itself, I would hold that a new trial is the more appropriate alternative.

I recognize that it may appear harsh to some to deprive plaintiffs of a judgment in their favor because of what could be viewed as a technicality. However, the requirement that a judgment n.o.v. be preceded by a motion for a directed verdict is based on the Seventh Amendment right to trial by jury. What is more, the rule is clearly stated in the Federal Rules of Civil Procedure and the importance of compliance with the prescribed procedure has been emphasized repeatedly by this Court. We are not free to ignore these rules which have been carefully drafted, and approved by the Supreme Court and the Congress

after thorough consideration by the entire bar, merely because their enforcement may be perceived as producing an undesirable result in a particular case. Accordingly, I would vacate the judgment for plaintiffs and order that a new trial be granted.