**William RILEY, Appellee,**

v.

**K MART CORPORATION, Appellant.**

**No. 88–1439.**

United States Court of Appeals,
Third Circuit.

Argued Oct. 21, 1988.

Decided Dec. 29, 1988.

As Amended Jan. 12, 1989.

---

Audrey L. Jacobsen (argued), Charles W. Craven, John J. Coffey, Marshall, Dennehey, Warner, Coleman and Goggin, Philadelphia, Pa., for appellant.

Drew P. D'Angelo, Joseph P. Stampone, Elizabeth A. Gray (argued), Philadelphia, Pa., for appellee.

Before HUTCHINSON, SLOVITER, Circuit Judges, and GERRY *, District Judge.

## OPINION OF THE COURT

GERRY, District Judge:

This appeal addresses whether a judgment for a plaintiff may be supported by a set of jury responses directly contradictory to and irreconcilable with a prior set of answers which, if they had been accepted, would have required a verdict for the defendant as a matter of law under the applicable comparative negligence statute. We conclude that it cannot.

## I. *BACKGROUND*

On May 17, 1984, William Riley, plaintiff below and appellee here, visited the store of the K mart Corporation, defendant below and appellant here, located at 4th and Oregon Streets in Philadelphia, Pennsylvania to purchase fishing equipment. App. at 38. While at the store, Riley went to the store's cafeteria. While in the cafeteria line, he fell. On January 17, 1986, Riley filed a complaint against K mart in the United States District Court for the Eastern District of Pennsylvania, alleging that his fall was caused by ice and water negligently permitted to remain on the cafeteria floor, and seeking damages for injuries suffered in the fall. Subject matter jurisdiction existed pursuant to 28 U.S.C. § 1332; the applicable substantive law was that of the Commonwealth of Pennsylvania.

On February 8, 1988 trial in this case commenced before a jury. At the end of testimony the next day, the jury was instructed on the relevant legal principles, including Pennsylvania's comparative negligence law. Specifically, the jury was instructed that if Riley's negligence "was equal to or exceeded that of the defendant, then the plaintiff would not win." App. at 202–203.**

The jury was then instructed on how to proceed in answering the questions on the court's verdict slip, which were propounded pursuant to Federal Rule of Civil Procedure 49(a) [1]. The jury was not asked to return a general verdict but only to answer the following questions:

1. Was K mart negligent? \_\_\_\_\_

---

\* Chief Judge, United States District Court for the District of New Jersey, sitting by designation.

\*\* In fact, the law in Pennsylvania precludes recovery only by a plaintiff whose negligence is greater than the defendant's, 42 Pa.Cons.Stat. Ann. § 7102(a) (Purdon 1982), as the district court correctly stated elsewhere in the charge. The district court's misstatement of the law in this part of the charge is not relevant to any issue on appeal.

1. Neither party has addressed the issue of whether the verdict slip sent to the jury in this case was tendered under Rule 49(a) or Rule 49(b). Nor did the district court indicate under which section of the rule it was proceeding. For purposes of this appeal, we need not hinge our decision on the applicability of Rule 49(a) as opposed to Rule 49(b) since, in either case, the district court retains the discretion to seek clarification from the jury of inconsistent responses. *Stanton v. Astra Pharmaceutical Prods.*, 718 F.2d 553 (3d Cir.1983). In *Stanton,* we held that there is no "reason in logic or policy to distinguish between Rule 49(a) and Rule 49(b) questions" when considering the propriety of resubmitting questions to a still-empaneled jury. *Id.* at 575. Rule 49(b), of course, expressly authorizes a trial judge to ask the jury to reconsider its answers if one or more is inconsistent with the general verdict it returns.

Here, the jury was asked to answer four questions, none of which explicitly calls for a general verdict. The district court's reaction to the answers given by the jury, discussed *infra,* indicates that it perhaps intended question 4, the damages question, to be in essence one asking the jury to return a general verdict. On its face, however, question 4 is not such a question. Further, this court has treated a similar set of interrogatories under Rule 49(a), *Andrasko v. Chamberlain Mfg. Corp.,* 608 F.2d 944 (3d Cir. 1979), as have other circuits. *See e.g., Willard v. The John Hayward,* 577 F.2d 1009 (5th Cir. 1978).

(a) If so, was its negligence a proximate cause of the accident? ____

2. Was plaintiff negligent? ____
   (a) If so, was his negligence a proximate cause of the accident? ____
   (If you find both parties negligent)

3. State the percentage by which the negligence of each party contributed to the accident.
   K mart ____
   Plaintiff ____

4. State the total amount of damages sustained by plaintiff as a result of the accident.
   $____

App. at 216.

The district court informed the jury that if it affirmatively answered questions 1 and 1(a) and found that K mart's negligence was a legal cause of the accident, it was to answer question 2. App. at 203. If the jury found that Riley's negligence also caused the fall, it was to answer question 3 by stating the percentage by which each party's negligence contributed to the accident. *Id.*

However, the court did not explicitly instruct the jury not to answer question 4 if Riley's negligence equalled or exceeded K mart's. Rather, the court told the jury to "find the total amount of damages regardless of whether plaintiff was or was not partly at fault." App. at 203-04. And near the end of its charge, the court said:

> Now, to recapitulate, you only get to the question of damages, of course, if you find that the incident happened generally in accord with the way the plaintiff and his witnesses say that it did. In short, only if you answer the first question "yes" do you need to answer any of the questions. *If you answer the first question "yes", then you do need to answer questions 2 and 3 and 4.*

App. at 206. (emphasis added). At the end of the instructions, the jury retired to begin its deliberations. Thereafter, the jury asked the district court two questions. The questions and the relevant portions of the court's response are set out below:

> Q. Is it the duty of the jury to decide on total amount of damages sustained by plaintiff as a result of the accident? (*e.g.*, are we to decide on bills other than those presently outstanding!! Who decides on monetary amount for pain and suffering?!!)
>
> A. If you find in favor of the plaintiff, you are required to decide the *total* amount of damages....
>
> Q. If we determine that both parties are negligent to some degree, does the figure for point 4 on our juror verdit [sic] form represent the monetary value at 100%.
>
> A. Yes. Your answer to 4 is the *total* amount of damages. (Of that amount, plaintiff will actually get a judgment in the lesser sum—i.e., your total award, reduced by the percentage of plaintiff's own negligence, if any).

App. at 214-215.

After further deliberation, the jury returned a completed verdict sheet which read:

Verdict

1. Was K mart negligent? yes
   (a) If so, was its negligence a proximate cause of the accident? yes

2. Was plaintiff negligent? yes
   (a) If so, was his negligence a proximate cause of the accident? yes
   (If you find both parties negligent)

3. State the percentage by which the negligence of each party contributed to the accident.
   K mart 30%
   Plaintiff 70%

4. State the total amount of damages sustained by plaintiff as a result of the accident.
   $250,000

App. at 216.

Under Pennsylvania law, plaintiff would receive nothing if a verdict was entered on such answers. Under a "pure" comparative negligence scheme, on the other hand,

plaintiff would be entitled to $75,000 in damages from the defendant.

Over the defendant's objection, the district court sent a note to the jury, seeking to clarify what it regarded as an inconsistency between the jury's allocation of responsibility for the accident between the parties and its answer to question 4 which set the plaintiff's damages at $250,000. The note read:

"Please clarify your verdict. As explained in my original instruction (but I forgot to include it again in answering your questions), if plaintiff's own negligence exceeds that of the defendant (*i.e.,* more than 50%), plaintiff loses. Your verdict assigns 70% negligence to plaintiff (*i.e.,* a verdict for *defendant*), but also states the amount of damages. Please clarify."

App. at 217. (emphasis in original). Following this communication the jury revised the verdict slip and lowered Riley's negligence from 70% to 49.9%, increased K mart's negligence from 30% to 50.1%, and lowered the total damages from $250,000 to $150,000. App. at 216, 218. The jury was polled and unanimously assented to the second set of answers. App. at 210. The district court thereafter entered a judgment for Riley based on the second set of responses, a judgment which awarded him $75,150 in damages from K mart. App. at 219, 220.

## H. *LEGAL ANALYSIS*

■ K mart, in both its post-trial motions below and in its briefs here, argues that the district court abused its discretion by refusing to enter judgment on the first set of jury answers. The first responses, K mart says, indicate a clear finding on the liability issue, a finding which, by law, requires a verdict for K mart. The fact that the jury stated a damages amount did not render its answer inconsistent since: (1)

the court did not tell the jury to state a damages amount only if K mart was more negligent than Riley and (2) the jury's finding as to the percentage of the harm caused by K mart was unambiguous.

The district court's decision to ask the jury to clarify its intent, K mart contends, conflicted with the seventh amendment's imperative that "no fact tried by a jury shall be otherwise re-examined in any court of the United States, than according to the rule of the common law." *Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.,* 369 U.S. 355, 359, 82 S.Ct. 780, 783, 7 L.Ed.2d 798 (1962). This imperative, it is argued, requires that "where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way." *Id.* at 364, 82 S.Ct. at 786. Since the jury's first answers could be viewed as consistent, by reading them as saying that Riley suffered $250,000 in damages from the fall but that K mart was only 30% responsible and therefore not under a legal duty to compensate Riley, K mart believes the Seventh Amendment required the district court to view them that way and to enter a verdict on those answers. While we do not doubt that the district court could have permissibly entered judgment in accordance with the first set of answers,[2] that is not the question before us. Rather, we must decide whether this is the only option consistent with the seventh amendment. We conclude that it is not.

K mart seems to misunderstand that the request for clarification was an attempt, in accord with the seventh amendment, to find clarity and consistency in the jury's answers. While the court's instructions were, in the aggregate, comprehensive and correct, the district court had sufficient cause to believe the jury was somewhat confused. Though the jury had been correctly instructed on the Pennsylvania com-

---

**2.** In a case involving jury answers similar to the first answers returned in this case, the Court of Appeals for the Fifth Circuit affirmed a district court's decision that a set of jury interrogatories was consistent. *Gallimore v. Missouri Pac. R. Co.,* 635 F.2d 1165 (5th Cir.1981). The Gallimore court held that the jury's findings that the defendant was not negligent and that set plain-

tiff's negligence at 80% were not inconsistent with its finding that $60,000 would adequately compensate the plaintiff since the form of the district court's interrogatories was such that the jury could have thought that it should answer the damages question regardless of whether it felt that defendant should compensate the plaintiff. *See also Willard,* 577 F.2d 1009.

parative negligence rule, the court's answer to one of the jury's questions implied that Pennsylvania has a "pure" comparative negligence scheme. App. at 214–215. Further, while the jury was told to answer the damages question only if it believed that the "accident happened generally in accord with the way the plaintiff and his witnesses say that it did," in virtually the next breath the jury was instructed that if it found that K mart was negligent by answering yes to question 1, then it did have to answer question 4 and state the total damages suffered by Riley. App. at 206. Given this background, the court's decision to seek clarification from the jury was reasonable and in accordance with the dictates of the seventh amendment and the law in this Circuit.[3]

Recently we have cited with approval the view of the Court of Appeals for the Fifth Circuit that:

It would be anomalous to hold that, while a court pursuant to Rule 49(a) must search for a view of the case which will make the jury's answers consistent, it may not submit an additional interrogatory to the jury to clarify an ambiguity.

*Morrison v. Frito–Lay, Inc.,* 546 F.2d 154, 161 (5th Cir.1977), cited in *McLaughlin v. Fellow Gear Shaper Co.,* 786 F.2d 592, 597 (3d Cir.1986),[4] *Stanton v. Astra Pharmaceutical Prods.,* 718 F.2d 553, 575 (3d Cir. 1983).[5] Both *Stanton* and *McLaughlin* smile on a district judge's use of additional questions "to obtain clarification from a still-empaneled jury of the meaning of its answers and verdict." *McLaughlin,* 786 F.2d at 597. Here, as in *McLaughlin,* the district court "did not redetermine the facts as found by the jury but rather asked the jury to reconsider its decision. In this there can be no Seventh Amendment viola-

**3.** Much of the confusion which surrounded the jury's first set of responses could have been obviated by clearer interrogatories. Had the verdict slip stated that question 4 was not to be answered unless the defendant's negligence exceeded the plaintiff's, the apparent inconsistency which troubled the district court would not have arisen.

**4.** In *McLaughlin* the jury in a products liability action was asked to answer five interrogatories and render a general verdict pursuant to Rule 49(b). Plaintiff was injured while using a hobbing machine sold to his employer by defendant Fellows Gear Shaper Company ("Fellows"). Plaintiff had been standing on the machine when the accident occurred, "setting-up" the machine.

The jury returned a general verdict for the plaintiff consistent with its findings that defendant Fellows had delivered a defective hobbing machine and that the defect proximately caused plaintiff's injury. The general verdict was, however, inconsistent with its findings that it was not foreseeable that employees would stand on the machine during the "setting-up process" and that plaintiff had assumed the risk.

The district court resolved these inconsistencies by submitting two additional interrogatories to the jury, directed at whether the jury believed that the fact that plaintiff stood on the machine was a substantial factor in causing the accident or the sole cause. The jury answered that the fact that plaintiff stood on the machine was *neither* the sole cause nor a substantial factor in causing the accident. We held, on appeal, that the district court did not abuse its discretion under Rule 49(b) by submitting additional interrogatories, nor did the court err by

setting aside the jury's finding on assumption of the risk as contrary to the evidence.

**5.** *Stanton* was a products liability suit in which the jury was asked to return a verdict by way of answers to twenty-seven "special questions". The jury returned with an award for the plaintiff against a defendant pharmaceutical firm and found the firm negligent with respect to several of the plaintiff's claims. However, several of the jury's answers, particularly those regarding causation, were inconsistent with its damage award. The trial judge resubmitted the questions to the jury and the jury changed its inconsistent responses so that they supplied the causal finding necessary for liability. On appeal the defendant attacked the resubmission as an abuse of discretion. We held that under either Rule 49(a) or 49(b) the district court retained the discretion to resubmit the questions to obtain clarification from the jury.

However, we also held that the district court abused its discretion in ordering a partial new trial as to damages only (in light of a post-trial decision of the Pennsylvania Supreme Court which changed the applicable law of damages). We considered the inconsistency among the jury's special question answers as a significant factor in our analysis of whether the new trial as to damages only was unjust. While the inconsistent answers may have been reconcilable enough to sustain a jury verdict against the defendant, they did, in concert with a relatively small damage award, suggest that the jury reached a compromise verdict. In such a situation a full new trial was required since it would work an injustice to retry the damages issue alone when the verdict was the product of jury compromise.

tion." [6] *Id.* at 596.

The troubling aspect of the district court's handling of the jury answers is not its decision to seek clarification of the jury's intent but, instead, its acceptance of a second set of responses totally inconsistent with the original answers. For the jury's second set of answers made only one thing clear—that the jury intended to award Riley approximately $75,000 in damages from K mart. After being reminded of Pennsylvania's rule on comparative negligence, the jury revised its still warm factual findings to reach the damage award it desired. In a matter of minutes, the plaintiff's damages dropped by $100,000 and the defendant's negligence increased by 20%. The district court indicated that the "jury apparently determined the amount of damages which should actually be awarded to the plaintiff, and tailored their liability findings to achieve the desired result." App. at 290.[7]

We do not regard the clarity of the jury's intent as supportive of the district court's decision to enter a verdict consistent with the second set of responses. The jury was not asked to determine how much K mart should pay Riley, it was asked to make factual findings as to the comparative negligence of the parties with respect to the accident and the total damages Riley suffered in the fall. While a court will not ordinarily inquire into a jury's thought processes, where it becomes obvious that a jury has disregarded the duties assigned it to the extent that its factual findings are

but a means to a result a court need not blind itself to that all too apparent reality. In this case, neither of the two sets of answers suggest itself as reliable once the jury's intent, as recognized by the district court itself, is considered.

The two sets of answers are consistent only insofar as they are different arithmetical pathways to the same pre-determined destination. There is nothing consistent or reconcilable about the directly contradictory factual findings rendered by the jury here. Riley's negligence is either 70% or 49.9%. He either suffered $250,000 or $150,000 in damages. There can be no principled reconciliation of such blatant inconsistencies, since there is no way of judging which, if either, is the more reasonable. The jury's task was not complex; this is simply not a case in which the jury rendered inconsistent answers which are explicable in light of the complexity or multiplicity of the questions asked of it. Like irreconcilable inconsistencies among answers within a set of interrogatory answers, *Andrasko*, 608 F.2d at 947, *Guy v. Rudd*, 480 F.2d 677 (3d Cir.1973), the fundamental inconsistencies among answers in the two sets of interrogatory answers here fatally undermines the judgment entered and mandates a new trial. *See Turchio v. D/S A/S Den Norske Africa*, 509 F.2d 101, 106 (2d Cir.1974); *cf. Burger King Corp. v. Mason*, 710 F.2d 1480, 1488–89 (11th Cir. 1983); *cert. denied*, 465 U.S. 1102, 104 S.Ct. 1599, 80 L.Ed.2d 130 (1984); *Royal Netherlands Steamship Co. v. Strachan Shipping Co.*, 362 F.2d 691, 694 (5th Cir.

6. K mart has asserted that the note the district court sent the jury was unduly suggestive and coercive. The note sent by the district court did not, in our view, suggest that the jury should award damages to the plaintiff Riley, but merely asked the jury to clarify its intent, in light of a legal principle which the court had not adequately emphasized. Though a district court should use caution when communicating with a jury on particular aspects of its function, lest it focus the jury too narrowly on a specific factor, ultimately "the form and extent of supplemental instructions are within the sound discretion of the court." *Beardshall v. Minuteman Press Int., Inc.*, 664 F.2d 23, 28 (3d Cir.1981). The form and content of the district court's communication here does not go beyond permissible bounds; it is not coercive nor does it suggest that the court thought plaintiff should win. It

does suggest that Riley could not collect damages unless he was less negligent than K mart. However, any instruction by the court reiterating this legal point would have made clear to the jury that as their answers stood, plaintiff could not have collected damages. The jury was persuaded only insofar as they had originally intended to make K mart compensate the plaintiff for some of his damages. In short, the note did not impermissibly exceed the bounds of the district court's discretion.

7. The district court also noted that "[i]t is reasonably clear that the jury intended to award the plaintiff approximately $75,000 in damages, and believed that its first attempt would achieve that result." App. at 289.

1966) *cert. denied,* 385 U.S. 1004, 87 S.Ct. 708, 17 L.Ed.2d 543 (1967); C. Wright & A. Miller, 9 *Federal Practice and Procedure* § 2510 (1971).

This outcome is particularly appropriate given the Commonwealth of Pennsylvania's legitimate interest in seeing its comparative negligence law applied with full vigor in federal diversity suits in which it is the applicable substantive law. The manipulation of negligence percentages evidenced in the jury's two sets of answers is particularly worrisome, since entry of judgment on the second set of answers seems to fly in the face of the Commonwealth of Pennsylvania's clearly expressed policy of denying recovery to a plaintiff whose negligence exceeds that of the defendant. To uphold the judgment entered below would be to sanction a verdict disrespectful of the applicable substantive law. We are aware that a properly instructed jury may choose to award damages to a plaintiff which it actually believes to have been more negligent than the defendant simply by manipulating the negligence percentages to allow

recovery, in essence by rendering a "compromise verdict," and that in the ordinary case such a verdict will sustain a judgment since the jury's motives will remain mysterious. This reality does not alter our view that the second set of answers rendered here cannot support the judgment entered.

When a court has no rational reason to explain to a defendant why it is choosing to accept a set of jury answers requiring a verdict for plaintiff over a set of answers supporting a verdict for defendant, beyond the jury's intention to give the plaintiff $75,000, it must exercise its discretion and order a new trial. Picking one set of answers over another could only result, as is the case on the facts here, in an arbitrary result.

Based on the foregoing, the judgment entered below will be vacated and the case remanded for a new trial.[8]

8. We decline to address K mart's other arguments. We do, however, wish to express our concern about one issue brought to our attention due to the probability of its recurrence on retrial. At trial, the court allowed the plaintiff and Albert Staples, one of the plaintiff's witnesses, to testify as to what someone said shortly after plaintiff's fall in the K mart cafeteria. Each testified that someone said, "I told you half an hour ago to clean that up." App. at 32. This testimony bolstered plaintiff's case insofar as it supported plaintiff's theory that that there was ice and water on the cafeteria floor at the time of the accident and that K mart knew about it.

Counsel for K mart rendered a general objection on each occasion, never stating specific grounds, Fed.R.Evid. 103(a)(1), which were overruled. App. at 32, 42. The declarant was never identified, beyond the plaintiff's testimony that he was a young man, twenty-two or twenty-three years old, wearing a shirt and tie, who looked like an "assistant manager." App. at 42. Balanced against plaintiff's testimony was testimony by a K mart cafeteria employee that no male employees were in the cafeteria at the time of the fall. App. at 157.

The district court denied appellant's motion for a new trial based on the admission of this testimony stating:

the evidence was plainly admissible to show the state of mind of the declarant. The evidence was received, not to establish the truth

of what was stated—that the instructions had been given—but to show that the declarant, at least, had adequate notice of the alleged dangerous condition. It bears mention, also, that the defendant's witnesses all agreed that the problem of ice spillage from that particular machine had been a recurring phenomenon for many months before the accident (their position was that the spilled ice had been cleaned up shortly before plaintiff's fall). The challenged evidence had very little significance in the context of the trial.
App. at 290–291.

Unfortunately, the record does not indicate that the statement was offered to show the declarant's state of mind rather than as an out of court statement "offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). Nor, apparently, was a limiting instruction requested, Fed.R.Evid. 105, or given instructing the jury to consider this statement only insofar as it bore on the declarant's state of mind, though this would have been the better practice despite counsel's failure to properly state the grounds for its objection. *Cf. United States v. Parry,* 649 F.2d 292, 295 (5th Cir.1981).

Further, while we are chary to comment on the relevancy of this testimony, given the district court's great discretion in this area, on retrial the testimony's relevance will require close scrutiny due to the failure of the plaintiff to identify the declarant as a K mart employee or agent. This failure also undermines the potential admissibility of this statement under the

vicarious admission provision of Fed.R.Evid. 801(d)(2)(D), since admissibility, under this provision requires a showing, by a preponderance of the evidence, under Fed.R.Evid. 104(a) that the statement was made by an agent acting "within the scope of his ... employment." Fed. R.Evid. 801(d)(2)(D); *Zenith Radio Corp. v. Matsushita Elec. Co., Ltd.,* 505 F.Supp. 1190, 1238 (E.D.Pa.1980), *rev'd in part on other grounds,* 723 F.2d 238 (3d Cir.1983) *rev'd on other grounds,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); 1 Weinstein's Evidence ¶ 104[5] at 104–38 (1988). Here, it is doubtful that plaintiff could have made such a showing.

Given that this testimony was the only evidence suggesting that K mart knew that there was ice and water on the floor *at the time of plaintiff's fall,* its admissibility should be carefully addressed on retrial. We are not prepared, however, based on the scant record before us, to say that the district court abused its discretion in admitting this testimony.